Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non–Prisoner)

# UNITED STATES DISTRICT COURT

for the

Western District of New York

_____ Division

| | | |
|---|---|---|
| Close2DaEdge Business Solutions LLC, Vern Ramon Lockridge | ) | Case No. **24 CV 1274** |
| | ) | |
| _____ | ) | _____ |
| *Plaintiff(s)* | ) | *(to be filled in by the Clerk's Office)* |
| *(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | ) | |
| | ) | Jury Trial: *(check one)* ☐ Yes ☑ No |
| -v- | ) | |
| EverGreenHealth Unconditional, Lamar Ward LLC | ) | |
| | ) | |
| _____ | ) | |
| *Defendant(s)* | ) | |
| *(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names. Do not include addresses here.)* | ) | |

UNITED STATES DISTRICT COURT
FILED
DEC 27 2024
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
### (Non-Prisoner Complaint)

### NOTICE

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in forma pauperis.

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non–Prisoner)

## I.     The Parties to This Complaint

### A.     The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Vern Ramon Lockridge |
| Address | 1329 Kenmore Ave. |
| | Buffalo |

| Buffalo | NY | 14208 |
|---|---|---|
| *City* | *State* | *Zip Code* |

| | |
|---|---|
| County | Erie |
| Telephone Number | 716-3889221 |
| E-Mail Address | VernLockridge@outlook.com |

### B.     The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title (if known) and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both. Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | Kristen Rivera |
| Job or Title *(if known)* | Director Of Housing Services |
| Address | 206 S. Elmwood Ave |

| Buffalo | NY | 14201 |
|---|---|---|
| *City* | *State* | *Zip Code* |

| | |
|---|---|
| County | Erie |
| Telephone Number | 716-847-2441 |
| E-Mail Address *(if known)* | krivera@evergreenhs.org |

☐ Individual capacity   ☐ Official capacity

Defendant No. 2

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Address | |

| | | |
|---|---|---|
| *City* | *State* | *Zip Code* |

| | |
|---|---|
| County | |
| Telephone Number | |
| E-Mail Address *(if known)* | |

☑ Individual capacity   ☐ Official capacity

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non–Prisoner)

Defendant No. 3

Name      Lamar ward

Job or Title *(if known)*      Landlord

Address      465 E. Utica St.

| Buffalo | NY | 14208 |
|---------|------|----------|
| *City* | *State* | *Zip Code* |

County      Erie

Telephone Number      716-553-7432

E-Mail Address *(if known)*

☑ Individual capacity ☐ Official capacity

Defendant No. 4

Name

Job or Title *(if known)*

Address

| | | |
|---------|------|----------|
| *City* | *State* | *Zip Code* |

County

Telephone Number

E-Mail Address *(if known)*

☐ Individual capacity ☐ Official capacity

## II. Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, you may sue federal officials for the violation of certain constitutional rights.

A.      Are you bringing suit against *(check all that apply)*:

☐ Federal officials (a *Bivens* claim)

☑ State or local officials (a § 1983 claim)

B.      Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983. If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?
ADA, NYS Human Rights Law & Constitutional Rights

C.      Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights. If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

D.      Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983. If you are suing under section 1983, explain how each defendant acted under color of state or local law. If you are suing under *Bivens*, explain how each defendant acted under color of federal law. Attach additional pages if needed.

Kristen Rivera, Emilio Rodriguez pretended like their agency was protecting me, but it lead to me witnessing psycological manupulation. And the same with Lamar Ward who new Simeon was dealing narcotics because I purchased from him. She recorded me for Lamar Ward and she now stating she didn't.

## III.   Statement of Claim

State as briefly as possible the facts of your case. Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A.      Where did the events giving rise to your claim(s) occur?

465 E Utica St., Buffalo,NY & 206 S. Elmwood Buffalo, NY

B.      What date and approximate time did the events giving rise to your claim(s) occur?

03/28/2024 is when I went to their office and she had me sign some paperwork see attached screen shot of the text from their employer that coecered me to sign attached paperwork. That's when she recorded me with my permission.

C.      What are the facts underlying your claim(s)? *(For example: What happened to you? Who did what? Was anyone else involved? Who else saw what happened?)*

Im now struggling my school dropped me because I coudn't stay focused from the fear I suffered from. Howard Pope Jr. approached me the day I did the police report against Simeon, and he he approached me in the passenger seat of a white lexas truck with some female driving. He asked me why did I make that statement on Facebook about his mother and I replied what statement because I forgot. But I later on rembered what I said about his mother told the killers of Clarence Jackson to burn her house down when they were finished to get an insurance claim. He then warned me that Simeon volunteered to kill me so watch my back.

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non-Prisoner)

**IV.    Injuries**

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.

I suffer from paranoid feelings and reactions when I leave and at home.

**V.    Relief**

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged.  Explain the basis for these claims.

These are criminals with permission & power to commit illegal offenses against me and then justify them. Crisis Services are my proof, because Kristen Rivera ordered them to come to my apartment and harass me with the police banging at my door like I've committed a crime and I made a complaint of the roof repaires plugging something up something in my apartment while I was asleep. I spotted Lamar Ward passin my apartment two times and got worried. She gave them my address to harm me and my identity has been stolen by the Charles Crule Family, George Halsey III who's mentioned in my trial testimony in front of Penny Wolfgang that got sealed. I'm also in trouble for that issue. I exposed corruption in the communities and the Erie County District Attorneys Office & Erie County State Supreme Court. They hung my jury

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non–Prisoner)

## VI.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:    12/27/2024

Signature of Plaintiff    *Vern R. Lockridge*

Printed Name of Plaintiff    Vern Ramon Lockridge

### B.    For Attorneys

Date of signing:    _____

Signature of Attorney    _____

Printed Name of Attorney    _____

Bar Number    _____

Name of Law Firm    _____

Address    _____

|  | *City* | *State* | *Zip Code* |
|---|---|---|---|

Telephone Number    _____

E-mail Address    _____

Print    Save As    Add Attachment    Preview

# UNITED STATES DISTRICT COURT

For The

Weste rn District of New York

Distri ct of _____

_____

Vern Ramon Lockridge

           Plaintiff

                                                        Case No. _____

V.

                                                        Judge _____

Evergreen Health Unconditional

Lamar Ward LLC

              Defendant

_____

My name is Vern Ramon Lockridge , in this civil claim against Evergreen Unconditional & Lamar Ward, I would like to accuse the two organizations of distributions of narcotics & money laundering. Around September of 2023 Evergreen Mental Health accepted me for housing while I was in a vulnerable living position at the Buffalo City Mission. While residing at the Buffalo City Mission a man named  William Mareckie enrolled me in the supposed HCV Section 8 program. He stated to me that it was a 10-month waiting list for me and that I could 1 get housed through Best Self or Evergreen. They now are not excepting my calls at the Section 8 office here in Buffalo NY., because  my identity has been shunned here in Buffalo NY. Evergreen came through and captured my identity through tricking me to move into a property owned by White Rock Baptist Church located at 465 E. Utica St., Buffalo, NY. That are affiliated with my enemies the Eastern Star Criminals who secretly use & sell drugs, prostitution and other sex trafficking offenses. The apartment they placed me in was a drug headquarters operated by Simeon & his girlfriend, because I've witnessed people purchase crack cocaine several times from them, while their children was present. Simeon and I became enemies through his relationship with Howard Pope Jr.,  who's a member of the Charles Crule family, who warned

me that Simeon and his girlfriend was going to kill me. Evergreen intentionally set me up to get

killed and quickly moved me, pretending that they're concerned with my safety. They placed

me where I'm residing at the filthiest apartment you could live in. I have conflict with the

Eastern Star and I'm afraid but courageous. I'm being watched by the upstairs neighbor Aaron

who's into selling narcotics, violence & prostitution. They have control of my identity & my life

is in danger, due to my original civil claim I filed. My upstairs neighbor is with Evergreen & I

notified them of his conduct & they said ignore him, which demonstrates they support rental

fraud. More than 1 person is residing with him for financial gains. I've saw other people with

keys to his apartment which was strange. This argument also explains how corruption is

controlling Erie County. Simeon was watching me for the Charles Crule Family because I

witnessed Charlene Crule at the White Rock Baptist Church one day and I also saw others like

Bryant C. Taylor enter the church.  Charlene Crule a known drug addict & the mother of

convicted drug dealer Rashaun Crule who I just ran into recently. Simeon was a service person

for Lamar Ward, who manages the entire property for White Rock Baptist Church. The Charles

Crule Family is a very powerful Black Mafia family with strong ties to Erie County Gov. another

enemy. This claim is proof of corru ption of religious organizations that never become exposed.

These religious organizations focu s on people with mental illness that are usually misguided

with money, free food to make the m feel that they're loved and it's a cover up. I knew Lamar

Ward was in on this conflict the w ay he handled the situation, being concerned. This claim is

associated with my other claim I ju st filed. I understand how the Black community operate, by

justifying the reason they do wron g. Using excuses like slavery & racism to take advantage of

the system as well as people. Krist en Rivera of Evergreen housing is the enemy that represents

the republican gov. The Republica n side of America has conflict with a situation that involved

my deceased uncle Jessie James Lo ckridge Jr., who supposed to have killed a Police Officer in

Galveston, TX. He never was convi cted, but only accused and was shunned away from

Galveston, TX. My family was targe ted for this matter and others, according to Freemason Paul

Hill. The lineage of my Grandmoth er Melvina Weaver Lockridge mysteriously disappeared. The

first family of my Grandfather Jessi e James Lockridge Sr. is guilty of getting rid of my family

lineage, to inherit the 40 acers, of  the Henry T. Lockridge Cemetery that was left to me.

Evergreen Unconditionals staff Ernilio Rodriguez was pretending that he was trying to help me and he was fishing for information that I had figured out and he used it against me. He kept threatening me that I was going to be homeless if I keep making statements. When in requested a copy of the police report and the recording of me explaining what the issue was between Simeon. Kristen Rivera explained to me that her boss needed the recording for evidence. She now states that she didn't record me and that exposes the whole set up. Brenda Pope told her son Howard Pope Jr. To warn me that Simeon was going to kill me and he did. I was on my way to donate plasma and a white Lexus truck came speeding down E Utica St. And past my house and quickly turned around and he pulled up on me and asked me why I make the statements about his mother on Facebook and he warned me then. Simeon came out the back yard and went down Wohlers at the time he warned me. Simeons and his girlfriend made the contact to them, letting them know that I was leaving out the house. Evergreen Unconditional gave the recording to White Rock Baptist Church to use against me along with the Voodoo Hex initiated by the Eastern Star Criminal Organization to use against me, This is the same thing The Restoration of Society did to me

but I did not catch it. I saw the enemies from time to time and didn't understand it until several months ago. Evergreen Unconditional became angry and started mailing me letters about the lease wouldn't be re-newed. What this agency did to me is use my anger against me to harm me with housing. I made a statement that I would kill the next person that enters my apartment without my permission and they left that part out. I had a knife on me for my protection inside my apartment, which is legal. Evergreen Unconditional has committed a crime against me and I survived it. I'm now exposing the hidden truth about the crack cocaine I was purchasing from Simeon and his girlfriend to the courts. I never mention to Lamar Ward or Evergreen Unconditional the true motive of me and Simeons dispute, because they already knew. Laundering drug money under my identity is known as a cash mule. The Eastern Star Criminal Organization has been trying to kill me since birth. Steven Andre Austin is an associate through his deceased father Steve Austin, is the person who orchestrated a vehicular manslaughter incident against me and then framed me through hanging my jury and had me sent to prison. While in prison they killed my mother and pretended that she died of the machine in the hospital giving out. My lawsuit I

filed in The United States Court of Claims is what I truly was making statements about.

Anthony P. Lo Russo was mentioned because he's the person that has been controlling my identity. I accused Evergreen Unconditional of being a shell company for the Jew Mafia. I explained to Emilio Rodriguez the full argument that I sent to The United States Federal Court of Claims and it was used against me. I failed my first term at school due to being paranoid, I couldn't stay focused on my studies. They now passed my identity over to an agency called TSI. They are going to do the same thing because I'm shunned by Erie County Government. I'm a hate crime victim because of my blood type being rare, meaning I'm related to ancient civilizations. I saw a guy that resembled Lamar Ward two times walk by my apartment. The second time I was giving a real evil look and it dawned on me. Evergreen Unconditional violated my disability rights, human rights as well as civil rights. They overlooked the fraudulent scam that was used against me for the Housing Choice Voucher Program, because they were trying to have me killed. I have no reason what so ever to accuse Kristen Rivera of recording me, because I could have said anything else, I threatened Lamar Ward with a lawsuit through text and he did not reply to me but

Evergreen Unconditional. I was affiliated with the Darkside of life and did not like it and removed myself like I was supposed to. I understand how these criminals operate with permission and must kill themsellves if plot is ever exposed. I have a right to say whatever choose to say regarding the defense of myself. Emilio Rodriguez never did home visits but told me that he just gave a report that I was ok. Aoron Swan my upstairs neighbor is watching me just like the last address. He's definitely involved in narcotics because he tried to purchase crack cocaine from me and I replied I don't sale or use drugs and told him to stay away. I reported the rental fraud that was going on with Simeon and his girlfriend and here at this address with Aoron and whoever he has living with him at the time. I reported this issue to the FTC and Attorneys Generals Office. That defense I used against Evergreen Unconditional cause them to treat me unfair by calling crisis services and making me seem like I had a problem. Having the Police bang on my front and back doors and windows as well. Evergreen Unconditional violated my Constitutional Rights through making me feel unsafe, they doubbled teamed me in a statement used against me in the eviction notice. When I reported this matter to the Attorney's general's office, they created

a defense to kick me off their program. The attached letter in this civil claim will demonstrate that they had no defense and ignored the complaint that someone who was contracted by the owner to plug something up in my apartment while I was sleep. That whole issue was ignored and now I'm suffering with a lot of anger, shame and embarrassment. These criminals only are concerned about something other than me or any other client. They place people in environments that are drug infested because in certain cases they're receiving some form of gain. In this civil claim I would request for the court to investigate these allegations and information mention thoroughly and render justice.

**EvergreenHealth**
**UNCONDITIONAL.**

p. 716.847.2441 | f. 716.847.2715 | evergreenhs.org

| 206 S. Elmwood Ave. | 3297 Bailey Ave. | 800 Hertel Ave., Suite 100 | 7 Community Dr., Suite A | 320 Prather Ave. |
| Buffalo, NY 14201 | Buffalo, NY 14215 | Buffalo, NY 14207 | Cheektowaga, NY 14225 | Jamestown, NY 14701 |

# Evergreen Housing First Program Participant Agreement and Sub-lease

**Patient Name:** Vern Lockridge
**DOB:** 12/13/1974
**ACCT#:** 3243

I.　　　　This is an agreement between Evergreen Health Services, referred to herein to as EHS, and the client/subtenant, Vern Lockridge stating the terms and conditions of acceptance in the Evergreen Housing First Program (EHFP) and the sub-lease of the dwelling at:

465 E Utica 3Rd Floor
Buffalo, NY  14208

(hereinafter the "dwelling").

This agreement shall be effective from 08/11/2023  until 08/10/2024  and unless terminated pursuant to the provisions below, shall automatically renew for successive terms of one (1) month each.   In the event of changes in income, household composition, or significant life change, a new agreement may be made. The client understands that the client's eligibility for participation may be affected by those changes.

II.　　　　EHS will be responsible for the provision or arrangement of the following:
　　　　A. Direct payment of  $950.00　　monthly to the order of:

LEMAR WARD     LLC
(Landlord)

465 E UTICA
(Street Address)

BUFFALO,NY 14208
(City, State, Zip Code)

　　　　will be applied as the client's regular rent.
　　　　B. Ongoing Interaction with the care team (CM, counselor, PCP) as it relates to the health and housing of the client.
　　　　C. Other services of a case manager as requested or required, including referral to adequate community resources.
　　　　D. Confidentiality of all client information

III. The client agrees to be responsible for the following:
　　　　A. Timely payment to the landlord in the amount of /month after one year of being linked in the program.
　　　　B. Notification of any financial or household composition changes within ten (10) days of the change.
　　　　　　　　1. A Zero Income Affidavit form may be signed and accepted as such. HAP staff hold ability and responsibility to regard the relevancy of the above mentioned form based on Client's curre financial statement.
　　　　C. Compliance with all tenant obligations of the lease/sublease agreement.
　　　　D. Payment of the following utilities:
　　　　　　☐ water　　　　☐ electricity　　　☐ natural gas　　　　☐ trash collection
　　　　　　☐ telephone service ☐ cable television ☐ other:

Client shall place the above identified utilities in client's name upon occupancy of the dwelling.
    E. Allow home inspection by EHS as EHS believes necessary, including inspections without warning.
    F. Regular contact with HAP staff when initiated by said staff.
        1. Client will communicate any housing needs/concerns initially to HAP staff. HAP staff will relay information as they relate to Client's housing to the landlord either on behalf of the Client or Client, as deemed most appropriate by HAP staff.
    G. Respect for the confidentiality of the program and persons associated with it.
    H. Review, revise and plan progress towards goals of self-sufficiency, as deemed necessary by HAP staff and Client.

IV. The client agrees to use the dwelling as follows:
    A. Only the client who signs this agreement or children or spouse of the client shall live in the property.
    B. Client agrees that the dwelling shall be occupied by no more than 1      persons, consisting of 1    adults and 0    children.
        Failure of Subtenant to notify EHS of any change in said number of persons shall constitute a breach of this Agreement.
    C. Client shall not engage in conduct that will disturb persons on neighboring properties.
    D. Client shall obey all laws and ordinances of the United States, the State of New York, and the City of BUFFALO      .
    E. Client will advise EHS of any damage caused by the Client, his invitees or family, and any damage to the apartment/house or the common area of which the client has knowledge.
    F. Client shall advise EHS within 72 hours of any appliances, equipment, or other items within the dwelling in need of repair and EHS will contact the landlord for repairs. If Client happens to notify landlord first, Client will ensure they notify EHS within 72 hours of notifying landlord.
    G. Client shall make no alterations to the Premises without the prior written consent of EHS. In the event written permission is given, no such alteration, additions, modifications, brackets, or other attachments shall thereafter be removed by the client, if such removal cannot reasonably be made without damage to the Leased Premises.
    H. Client agrees that any furnishings in the dwelling provided by EHS or Landlord are the property of EHS or Landlord and Client is responsible for keeping such furnishings in as good a condition as possible. Such furnishing may not be sold. Neither EHS nor Landlord is responsible for replacing any furnishings that have been sold or damaged beyond normal wear and tear.

V. This agreement may be terminated in any of the following manners:
    A. Upon 30 day written notice from the client, for any reason.
    B. Upon 30 day written notice from EHS, for any reason.
    C. By mutual agreement.
    D. Involuntary and immediate termination of services of this agreement may occur for one or more of the following:
        1. Medical in-home services are inadequate to meet the needs of the client,
        2. Client's behavior poses an imminent risk of serious physical harm to self or others,
        3. Client is actively engaged in sale of illegal substances,
        4. Client does not abides by the conditions outlined in section III of this agreement,
        5. Misrepresentation of facts which lead to the acceptance or continuation of EHFP assistance,
        6. Client fails to maintain the confidentiality of the program or persons associated,
        7. EHS discontinues administration of services or no longer receives funds to provide associated services or
        8. Client is awarded permanent housing subsidy or is no longer eligible for this assistance.
        9. Client is found to be exchanging and/or receiving money, goods, etc. for shelter from an individual who does not reside on the participation agreement.
    E.    Client's case may be subject to review, with possible risk of losing subsidy, should Client not comply with or violate the above outlined terms.
    F.    Termination of the lease for the premises located at 465 E UTICA 3RD FLOOR 14208

VI. In the event that the client requires inpatient treatment for medical and/or substance recovery, the assistance will continue for the dwelling for a period not to exceed ninety     (90) days.

VII. If the client is incarcerated, assistance will continue so long as the client can provide   evidence that incarceration does not affect his or her ability to comply with section III of     this agreement. Assistance is pursuant to limits established in section VI of this agreement.

IX. By accepting EHFP assistance.
     A. Client agrees to indemnify and hold Evergreen Health Services harmless from any claims or causes of action arising out of client breach of this agreement.
     B. Client understands that an action to reduce Food Stamp assistance will be filed by the NYS Department of Social Services.

X. Evergreen Health Service does not discriminate on the basis of race, creed, gender, age, or sexual orientation.

I, Vern Lockridge, having duly read and understanding this agreement, having received a duplicate copy thereof, and having read the lease for the dwelling between EHS and Landlord and understanding the obligations of EHS as Tenant which are imposed on me, agree to abide by the terms and conditions herein.

**Client Signature:**

Electronically signed on 08/10/2023 at 3:16 pm

**Housing First Retention Counselor:**

Michael Gilbert

Electronically signed by Michael Gilbert on 08/10/2023

**Director of Supportive Services:**

### Evergreen Housing First Program Participant Agreement and Sub-lease

### Lead-Paint Warning Statement

This is an addendum to the Evergreen Housing First Program Participant Agreement and Sub-lease between Evergreen Health Services, referred to herein to as EHS, and the client/subtenant, Vern Lockridge regarding the dwelling at:

465 E Utica 3Rd Floor
Buffalo, NY 14208

(hereinafter the "dwelling").

Housing built before 1978 may contain lead-based paint. Lead from paint, paint chips, and dust can pose health hazards if not taken care of properly. Lead exposure is especially harmful to young children and pregnant women.

I understand that the dwelling was built before 1978 and may contain lead-paint. I have received and reviewed the Lease Agreement signed by EHS which states that the Community Services for the Developmentally Disabled, Inc. (hereinafter "Landlord") has no reports of testing providing the actual existence of lead-based paint or other lead-based hazards.

I, Vern Lockridge, have duly read and understand the above, have received a duplicate copy thereof, and have read the lease for the dwelling between EHS and Landlord and understanding the warning contained therein,

**Client Signature:**

Electronically signed on 08/10/2023 at  3:16 pm

**Housing First Retention Counselor:**

Michael Gilbert

Electronically signed by Michael Gilbert on 08/10/2023

**Director of Supportive Services:**

v1.8.20

EvergreenHealth
**UNCONDITIONAL.**

p. 716.847.2441 | f. 716.847.2715 | evergreenhs.org

| 206 S. Elmwood Ave. | 3297 Bailey Ave. | 800 Hertel Ave., Suite 100 | 7 Community Dr., Suite A | 320 Prather Ave. |
| Buffalo, NY 14201 | Buffalo, NY 14215 | Buffalo, NY 14207 | Cheektowaga, NY 14225 | Jamestown, NY 14701 |

# Housing First
# Initial Service Plan

**Patient Name:** Vern Lockridge
**DOB:** 12/13/1974
**ACCT#:** 3243

**Preferred Name:** Vern

**Service Plan Date:** 11/07/2023
08/18/23 - Evergreen Program Enrollment

## INDIVIDUAL STRENGTHS AND NEEDS

What is important to the individual?
STAYING OUT OF TROUBLE AND HOUSED IS MOST IMPORTANT CURRENTLY
What does the individual want to accomplish from being in the program?
VERN WOULD LIKE TO ACCOMPLISH BECOMING MORE INDEPENDENT WHILE IN THE PROGRAM
## HOUSING STRENGTHS AND NEEDS

Describe the housing history of the individual, past and present.
VERN WAS HOMELESS AND LIVING AT BUFFALO CITY MISSION BEFORE BEING HOUSED WITH
EVERGREEN IN AUGUST 2023
What has kept the individual from being stably housed? (Past or Present)
BAD LUCK AND HANGING AROUND BAD CROWDS KEPT STABLE HOUSING DIFFICULT
Identify Strengths of the individual that foster independent living.
BEING INDEPENDENT AND ORGANIZED ARE STRENGTHS VERN SEES IN HIMSELF
## MEDICAL STRENGTHS AND NEEDS

What has the individual been diagnosed with and what medical challenges does the individual face?
N/A
Identify medical resources the individual is currently utilizing.
VERN VISITS BUFFALO GENERAL AND USES EVERGREEN FOR RESOURCES
Identify medical resources needed or underutilized.
DENTIST
## SUBSTANCE USE STRENGTHS AND NEEDS

What substances does the individual use and how often?
VERN IS CURRENTLY ONLY USING TOBACCO AS A SUBSTANCE AND USES IT DAILY
How does using substances help the individual?
HELPS CALM VERN DOWN
What coping skills or harm reduction strategies can the individual use?
VERN GOES ON WALKS AND OUT INTO THE COMMUNITY TO KEEP BUSY AS A HARM
REDUCTION STRATEGY
## MENTAL HEALTH STRENGTHS AND NEEDS

Identify the individual's mental health diagnosis (as applicable):
N/A
Identify the individual's current adherence to treatment and/or treatment readiness, including past/current
providers.
VERN WOULD SUBMIT TO TREATMENT SHOULD IT BE NEEDED IN THE FUTURE

## SOCIAL SUPPORT STRENGTHS AND NEEDS

Who can the individual go to for help and support?
VERN USES HIS GIRLFRIEND AND CLOSE FRIENDS FOR SUPPORT
Identify social supports needed to help the individual remain stably housed.
EVERGREEN AND SUPPORT FROM FAMILY ARE NEEDED TO REMAIN HOUSED

### MONTHLY SPENDING PLAN

| INCOME | AMOUNT |
|---|---|
| Work | $0 |
| SSD | $0 |
| SSI | $850 |
| SNAP | $200 |
| Public Assistance | $0 |
| Shelter Allowance | $0 |
| Other | $ |
| *SUBTOTAL* | $ |

| NEEDS | AMOUNT |
|---|---|
| Rent | $ |
| Food | $ |
| Medicine Co-Pay | $ |
| Utilities | $ |
| Personal Hygiene | $ |
| *SUBTOTAL* | $ |

| WANTS | AMOUNT |
|---|---|
| Telephone | $ |
| Cable | $ |
| Cigarettes | $ |
| Clothing | $ |
| Household | $ |
| Entertainment | $ |
| Savings | $ |
| Special | $ |
| Other | $ |
| *SUBTOTAL* | $ |

**INCOME - NEEDS - WANTS =**      $

### ACTION PLAN: How will you change your spending?

Action 1: VERN WOULD LIKE TO LEARN TO BUDGET BETTER TO MAKE HIS DOLLAR GO FURTHER EACH MONTH

Action 2: VERN WOULD LIKE TO FIND A PART TIME JOB TO HELP SAVE UP TO FIX HIS CAR

### ADDITIONAL INDEPENDENT LIVING SKILLS STRENGTHS AND NEEDS

Money Management: Needs Assistance          Housekeeping: Independent

Nutrition/Fitness: Needs Assistance          Transportation: Independent

Personal Care: Independent          Communication/Intrapersonal Skills: Independent

Education/Training: Independent          Employment and/or Volunteering: Independent

Vern Lockridge          Acct# 3243          DOB 12/13/1974          Page #2

## GOALS

**Goal:** IS TO BECOME BETTER FINANCIALLY STABLE, AND
TO GET HIS CAR FIXED BEFORE WINTER TAKES
OFF

| Action Steps: How will this be achieved? | Who is Responsible? | Target Completion Date |
|---|---|---|
| 1. SAVE/BUDGET INCOME BETTER | SELF | 12/19/2023 |
| 2. LOOK FOR A PART TIME JOB TO HELP WITH EXTRA INCOME | SELF | 05/07/2024 |
| 3. | | |
| 4. | | |
| 5. | | |

**Patient Signature:**

Electronically signed on 11/07/2023 at 11:10 am

**Staff Signature:**

Michael Gilbert

Electronically signed by Michael Gilbert on 11/07/2023

**Supervisor Signature:**

Kristin Rivera

Electronically signed by Kristin Rivera on 11/10/2023

v.1.8.20

Vern Lockridge          Acct# 3243          DOB 12/13/1974          Page #3



**EvergreenHealth**
## UNCONDITIONAL.

p. 716.847.2441 | f. 716.847.2715 | evergreenhs.org

| 206 S. Elmwood Ave. | 3297 Bailey Ave. | 800 Hertel Ave., Suite 100 | 7 Community Dr., Suite A | 320 Prather Ave. |
| Buffalo, NY 14201 | Buffalo, NY 14215 | Buffalo, NY 14207 | Cheektowaga, NY 14225 | Jamestown, NY 14701 |

# Housing First
# Orientation Packet

**Patient Name:** Vern Lockridge
**DOB:** 12/13/1974
**ACCT#:** 3243

Dear Vern:

Welcome to the Evergreen Health (EHS) Housing First Program. The main objectives of our programs are to:
1. Reduce the length of homelessness and shelter time by assisting you to secure housing as quickly as possible.
2. Reduce return rates to homelessness by providing support services to help eliminate any barriers to maintain housing.

You are enrolled in the Housing First program. Evergreen Health holds the leases to all of the Housing First Units that participants reside in. Participants are *Subleasing* the unit. Please see Participation Agreement/Sub Lease for more information. You have been assigned a Housing Retention Counselor (HRC) to help you with the following services:

- Assistance with Housing Search
- Vocational referrals and assistance
- Tenant Counseling
- Understanding Leases/Sub Leases
- Arranging for Utilities
- Making Moving Arrangements
- Mediation with Property Owners and Landlords
- Coordinating and Providing Information and Referrals to Other Providers
- Home Visits (1-4xs per month)
- Linkages with Health and Other Care Providers (i.e. Housing Navigation, THRIVE, Care Coordination, etc.)

**Participants with an income source at intake will receive a rental stipend calculation upon moving into a unit. The participant portion of the rent is paid directly to Evergreen Health. Should the participant fall behind paying the rental portion or utilities, patients will be required to secure a payee of their choosing or Evergreen Health will petition the help of Adult Protective Services to assign a payee to the Participant.

Initials: Electronically signed on 02/29/2024 at 3:39 pm

## Contact and Transportation Consent

1. By providing any contact information to your HRC, you are giving us permission to contact you and leave messages with medical, appointment and other information. If your contact information changes (i.e., new number), and you provide us with the new information, you also consent to the above for any new contact information unless you otherwise specifically state No.

Initials: Electronically signed on 02/29/2024 at 3:39 pm

2. In consideration of Transportation services to be rendered for my benefit by Evergreen Health, I hereby, for myself, executors, and administrators, waive release and forever discharge any and all rights and/or claims for damages of any kind which hereafter accrue to me against Evergreen Health Services, their respective officers, affiliates, agents, employees, representatives, successors, any other participating organization and all participating sponsors,

arising out of my travel to, participation in, and return from services associated with Evergreen Health.



Initials:Electronically signed on 02/29/2024 at  3:39 pm

## Evergreen Code of Conduct
1. By initialing below, you agree to Evergreen Health's Code of Conduct.
   • Please see attached for Code of Conduct and initial that you've reviewed with HRC.

Initials:Electronically signed on 02/29/2024 at  3:40 pm

## Patient Program Contracts

Patient Program Contracts will be discussed with the participant and implemented by the HRC. **These contracts will be implemented if a participant does not follow through with program guidelines after multiple requests to do so.** These contracts are meant to be a plan to help the patient re-establish themselves back onto the path towards housing stability. **These contracts may lead to program termination if the participant fails to follow through with the agreed upon contract.** A participant has a right to appeal termination from the program, please see the Grievance Procedure section.

Before a contract is implemented, the participant will be given **1-2 verbal warnings** (that are documented in the HRC's case notes) and **one(1) written warning** before a contract is implemented. Below are examples of warnings and terminations.

## Warnings:
•  Refusing to meet with the Housing Retention Counselor (HRC).
•  Refusing to provide updated income verification in a timely manner.
•  Continually missing or canceling scheduled appointments with your HRC.
•  Continually missing or canceling referral appointments.
•  Refusing to follow up with referrals that address housing independence goals.
•  Continued lease infractions such as damage to apartment property, menacing, community disruption, etc.

## Terminations:
•  The participant has received 1-2 verbal warnings, 1 written warning, **and** did not follow through with the agreed upon contract.
•  Fraudulent statements and/or documents to gain benefits or eligibility into the program may result in termination. This includes deliberately not reporting all household income.
•  Conducting criminal activity in your apartment may result in termination from the program. Such activity would be confirmed by a conviction or the HRC or other employees of EHS witnessing such activity that would put the employee at risk of harm.
•  Threatening or menacing an HRC or other EHS employee will result in termination from the program.

## Grievance Procedure:
Participants have a right to appeal a decision that has a significant impact on their program participation. Steps to take a file a grievance:
1. Contact the HRC's immediate supervisor and request a review of the grievance. The supervisor should respond within two to three business days.
2. The supervisor will have 5 days to review and inform the participant of their decision (in writing).
3. If original action is upheld, the supervisor will state why they are upholding the decision.
4. The participant may appeal the supervisor's decision by contacting the AVP of Supportive Services.
5. The AVP will attempt to resolve the dispute within five business days. The AVP will make a final decision and notify the client in-writing within five (5) business days.

**Contact Information:**
Organization Address: Evergreen Health, 206 South Elmwood Ave., Buffalo, NY 14201
Your HRC (*Housing Retention Counselor*): MICHAEL GILBERT
HRC's Phone Number: 716-954-9779
HRC's Supervisor:KRISTIN RIVERA                    Phone Number: 716-847-2441

**Participant Signature:**

Electronically signed on 02/29/2024 at  3:39 pm

**Staff Signature:**

Michael Gilbert

Electronically signed by Michael Gilbert on 02/29/2024
V1.11.23

# EHS Housing Assistance Program Rental Stipend Calculation

| | | | |
|---|---|---|---|
| Name: | VERN LOCKRIDGE | No. of Bedrooms: | 1 |
| Address: | 465 E UTICA AVE | Fair Market Rent: | $ 992 |
| City: BUFFALO | New York | Contract Rent: | $ 1,000 |
| Zip: 14208 | | Utility Costs/Allowance: | $ - |
| Reason for Calculation: | Annual Financial Review | Amount Over FMR: | $ 8 |
| Apartment Eligibility: | Apartment Is Eligible | | |

## I. Income and Allowances

| A. Monthly Income | | B. Annual Allowances | |
|---|---|---|---|
| Source | Amount | Allowance | Amount |
| 1. Monthly Gross Wages | $ 903 | Number of Dependents | 0 |
| 2. Monthly Federal Entitlements | $ - | 1. Annual Dependent Allowance | $ - |
| 3. Monthly Payments in Lieu of Earnings | $ - | No. of Elderly/Disabled Family Members | 1 |
| 4. Monthly Welfare Cash Assistance | | 2. Elderly /Disabled Family Allowance | $ 400 |
| 5. Monthly Welfare Shelter Allowance | | 3. Reasonable Childcare Expenses | |
| 6. Monthly Welfare Utility Allowance | $ - | 4. Expenses for Disabled/Elderly | |
| 7. Periodic Payments/Month | $ - | 5. Medical Expenses for Disabled/Elderly | |
| | | 6. Allowable Disabled/Medical Deduction | $ - |
| | | 7. Earned Income Disregard | $ 10,836 |

| II. Income Eligibility | | III. Adjustments To Total Household Income | |
|---|---|---|---|
| Annual GROSS Household Income: | $ 10,836 | Reduced Gross Household Income: | $ 10,836 |
| Area Median Income for Household Size: | $ 93,900 | Total Allowances: | $ 400 |
| 80% -Low Income: | $ 52,000 | Total Annual Adjusted Household Income: | $ 10,436 |
| 50% - Very Low-Income: | $ 32,500 | | |
| Meets Income Eligibility | | | |

## IV. Tenant Rent Calculation

| HUD regulations require that tenant's pay for rent either the higher amount of 10% of Gross Monthly Income, or 30% of Adjusted Monthly Income, or the Designated Welfare Rent each month directly to the Landlord. | | |
|---|---|---|
| a. 10% of Gross Monthly Income: | $ | 90 |
| b. 30% of Adjusted Monthly Income: | $ | 261 |
| c. Welfare Shelter Allowance | $ | - |

| | | |
|---|---|---|
| Tenant Monthly Rent Portion: | $ | 261 |
| HAP Rent Subsidy to Landlord: | $ | 739 |
| HAP Utility Reimbursement to Tenant: | $ | - |

## V. Certification

| The above information is accurate to the best of my knowledge with proper documentation. The client agrees to inform EHS of any changes in income or allowances at the time that they occur. An application for a Federal Section 8 Rental Assistance program has been completed and will be diligently pursued. | Client Signature: | Vern N. Lockridge | Date: 2/29/24 |
|---|---|---|---|
| | HAP Staff Preparing Calculation: | MICHAEL GILBERT | |
| | Staff Signature: | | Date: 16-Feb-2024 |

## EHS HAP Earned Income Disregard Worksheet

| HUD requires disregard for income to previously unemployed persons with disabilities who have earned income |
|---|
| as described in 24CFR5.617(a)(b)(c)(d). Use this Section ONLY at income Re-certification Time, IF applicable. |

To qualify for the EID, the household must be a household with a disabled family member who receives assistance through HUD/HOPWA **AND** meets any one of the following:

a.  A disabled family member's earned income increases as a result of employment, after a period of unemployment of one or more years prior to employment, or earning no more than minimum wage for 500 hours or less during the past 12 months. For local minimum wage go to: http://www.dol.gov/whd/minimumwage.htm.

b.  A disabled family member's earned income increases as a result of participation in an economic self-sufficiency program or other job-training program.

c.  A disabled family member's income increases as a result of employment during or within six (6) months after receiving assistance, benefits, or services under TANF or a Welfare-to-Work program (including one time only cash assistance of at least $500.)

Client Name: **VERN LOCKRIDGE**          No. of months earning income: 12

| Income Disregard Calculation | |
|---|---|
| The full amount (before payroll deductions) of annual employment wages and salaries, overtime pay, commissions, fees, tips and bonuses, other compensation for personal services prior to payroll deductions. Does not apply to armed forces pay. Applies to employment income of client and all household members 18 and older. (For full-time students who are 18+, but are NOT head, co-head, spouse or sole member, only $480 of their total annual earned income should be included here.) | $ - |
| Net income from operation of a personally owned business or profession. | $ - |
| All regular pay, special pay and allowances of a member of the Armed Forces (Except Hostile Fire Pay) | $ - |
| Total annual gross OTHER income | $ 10,836 |
| **Total annual gross income** | **$ 10,836** |
| Pre-EID Qualifying Income AKA "baseline" income (Enter total gross annual income, both earned and unearned, from the most recent income review prior to first EID eligibility for the household's EID-eligible member ONLY.) This baseline/pre-qualifying income amount will always be used throughout the 24 months of disregard. | $ - |
| **Total annual gross income disregard** | **$ 10,836** |

Applicable earned income to be disregarded: $ 10,836

## EHS Housing Assistance Program Monthly Rental Assistance Landlord Contract

This Monthly Rental Assistance Contract ("Contract") is entered into between Housing Assistance Program (HAP) and the Landlord,
| L3L CORP (LAMAR WARD) | . This Contract applies only to the Tenant , | VERN LOCKRIDGE |
at the dwelling unit located at | 465 E UTICA AVE | BUFFALO | NEW YORK | 14208 |.

1  **TERM OF THE CONTRACT**
The term of this contract begins on | 2/16/2024 | and end no later than | 2/16/2025 |. The Contract automatically terminates on the last day of the Lease.

2  **RENT AND AMOUNTS PAYBLE BY TENANT AND THE HOUSONG ASSISTANCE PROGRAM**
A. *Initial Rent* . The initial total monthly rent payable to the Landlord for the first twelve months of this Contract is | $  1,000 |
B. *Rent Adjustments* . With no less than 60 days' notice to the Tenant and HAP, the owner may propose a reasonable adjustment (15%) to be effective no earlier than the 13th month of this Contract. The proposed rent may be rejected by either the Tenant or the (program administrator). The Tenant may reject the proposed rent by providing the Landlord with 30 days' written notice of intent to vacate. If the program administrator rejects the proposed rent, the program administrator must give both the Tenant and the Landlord 30 days' notice of intent to terminate the Contract.
C. *Tenant Share of the Rent* . Initially, and until such time as both the Landlord and the Tenant are notified by HAP, the Tenant's share of the rent shall b | $  261 |.
D. *The Housing Assistance Program Share of the Rent* . Initially, and until such time as both the Landlord and Tenant are notified by EHS, HAP's share of the rent shall b | $  739 |. Neither HAP nor the entity providing HAP with funds for this assistance assume any obligation for the Tenant's rent or for payment of any claim by the Owner against the Tenant. HAP's obligation is limited to making rental payments on behalf of the Tenant in accordance with this Contract.
E. *Payment Conditions* . The right of the owner to receive payments under this Contract shall be subject to compliance with all of the provisions of the Contract. The Landlord shall be paid under this Contract through ACH deposit (direct deposit) on or about the first day of the month for which the payment is due. The Landlord agrees that acceptance of the ACH credit and notification of such shall be conclusive evidence that the Landlord received the full amount due for the month, and shall be a certification that
1  The Contract unit is in decent, safe and sanitary condition, and that the Landlord is providing the services, maintenance and utilities agreed to in the Lease.
2  The Contract unit is leased to and occupied by the Tenant named above in this Contract.
3  The Landlord has not received and will not receive any payments as rent for the Contract unit other than those identified in this Contract.
4  To the best of the Landlord's knowledge, the unit is used solely as the Tenant's principal place of residence.
F. *Overpayments* . If HAP determines that the Landlord is not entitled to any payments received, in addition to other remedies, HAP may deduct the amount of the overpayment in a manner indicated in the Direct Deposit Authorization Agreement

3  **HOUSING QUALITY STANDARDS AND LANLORD-PROVIDED SERVICES**
A. The Landlord agrees to maintain and operate the Contract unit and related facilities to provide decent, safe and sanitary housing in accordance with 24 CFR Section 882.109, including all of the services, maintenance and utilities agreed to in the Lease.
B. HAP shall have the right to inspect the Contract unit and related facilities at least annually, and at such other times as may be necessary to assure that the unit is in decent, safe, and sanitary condition, and that required maintenance, services and utilities are provided.
C. If HAP determines that the Landlord is not meeting these obligations, the program administrator shall have the right, even if the Tenant continues in occupancy, to terminate payment of HAP's share of the rent and/or terminate the Contract.

4  **TERMINATION OF TENANCY**
The Landlord may evict the Tenant following applicable state and local laws. The Landlord must give the Tenant at least 30 days' written notice of the termination and notify HAP in writing when eviction proceedings are begun. This may be done by providing the HAP with a copy of the required notice to the tenant.

5  **FAIR HOUSING REQUIREMENTS**
A. Nondiscrimination. The Landlord shall not, in the provision of services or in any other manner, discriminate against any person on the grounds of age, race, color, creed, religion, sex, handicap, national origin, or familial status. The obligation of the Landlord to comply with Fair Housing Requirements insures to the benefit of the United States of America, the Department of Housing and Urban Development, and HAP any of which shall be entitled to involve any of the remedies available by law to redress any breach or to compel compliance by the Landlord

    8. Cooperation in Quality Opportunity Compliance Reviews. The Landlord shall comply with the HAP and with the funding entity (NYS DOH, HUD, etc.) in conducting compliance reviews and complaint investigations pursuant to all applicable civil rights statutes, Executive Orders and all related rules and regulations.

## 6 RIGHTS OF THE HOUSING ASSISTANCE PROGRAM IF LANDLORD BREACHES THE CONTRACT

    A. Any of the following shall constitute a breach of the Contract:

        (1) If the Landlord has violated any obligation under this Contract; or

        (2) If the Landlord has demonstrated any intention to violate any obligation under this Contract; or

        (3) If the Landlord has committed any fraud or made any false statement in connection with the Contract, or has committed fraud or made any false statement in connection with any Federal housing assistance program.

    B. HAP's right and remedies under the Contract include recovery of overpayments, termination or reduction of payments, and termination of the Contract. If HAP determines that a breach has occurred, they may exercise any of its rights or remedies under the Contract. HAP shall notify the Landlord in writing of such determination, including a brief statement of the reasons for the determination. The notice by HAP to the landlord may require the Landlord to take corrective action by a time prescribed in the notice.

    C. Any remedies employed by HAP in accordance with this Contract shall be effective as provided in a written notice by HAP to the Landlord. HAP's exercise or non-exercise of any remedy shall not constitute a waiver of the right to exercise that or any other right or remedy at any time.

## 7 THE HOUSING ASSISTANCE PROGRAM RELATION TO THIRD PARTIES

    A. HAP does not assume any responsibility for, or liability to, any person injured as a result of the Landlord's action or failure to act in connection with the implementation of this Contract, or as a result of any other action or failure to act by the Landlord.

    B. The Landlord is not the agent of HAP and this Contract does not create or affect any relationship between HAP and any lender to the Landlord, or any suppliers, employees, contractors or subcontractors used by the Landlord in connection with this Contract.

    C. Nothing in this Contract shall be construed as creating any right of the Tenant or a third party (other than the funding entity) to enforce any provision of this Contract or to asses any claim against the funding entity (NYS DOH, HUD, etc.), HAP or the Landlord under this Contract.

## 8 CONFLICT OF INTEREST PROVISIONS

No employee of HAP who formulates policy or influences decisions with respect to the Rental Assistance Program, and no public official or member of a governing body or state of local legislator who exercise his functions or responsibilities with respect to the program shall have any direct or indirect interest during this person's tenure, or for one year thereafter, in this contract or in any proceeds or benefits arising from the Contract or to any benefits which may arise from it.

## 9 TRANSFER OF THE CONTRACT

The landlord shall not transfer in any form this contract.

## 10 ENTIRE AGREEMENT, INTERPRETATION

    A. This Contract contains the entire agreement between the Landlord and HAP. No changes in this Contract shall be made except in writing signed by both the Landlord and HAP.

    B. The Contract shall be interpreted and implemented in accordance with funding entity (NYS DOH, HUD, etc.) requirements.

## 11 WARRANTY OF LEGAL CAPACITY AND CONDITION OF UNIT

    A. The Landlord warrants the unit is in decent, safe, and sanitary condition as defined in **HUD 24 CFR Section 882.109** (attached), and that the landlord has the legal right to lease the dwelling unit covered by this Contract during the Contract term.

    B. The party, if any, executing this Contract on behalf of the Landlord hereby warrants that authorization has been given by the Landlord to execute it on behalf of the Landlord.

_____

LANDLORD or Representative Signature

_____

RHS HAP Representative Signature

_____

Date

2-29-24

Date

WARNING: 18 U.S.C. 1001 provides, among other things, that whoever knowingly and willfully makes or uses a document or writing containing any false, fictitious, or fraudulent statements or entry, in any matter within the jurisdiction of any department or agency of the United States, shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

V. In the event that client dies or becomes too ill to live at the assisted dwelling, other members of the household are eligible for assistance through this program. Assistance includes relocation, referral, and temporary stipend continuation. HAP will provide assistance for no longer than six (6) months after the index client has passed or left the dwelling. In extreme cases where there are severe issues preventing relocation, the Director may request an assistance extension from the funding provider(s).

VI. In the event that the client requires inpatient treatment for medical and/or substance recovery, the assistance will continue for the dwelling for a period not to exceed sixty (60) days. In cases that require longer than 60 days inpatient, payments will stop and the case will be placed on hold for up to thirty (30) days. HAP will not make arrangements to liquidate dwellings. Assistance may continue based on section V of this agreement

VII. If the client is incarcerated, assistance will continue so long as the client can provide evidence that incarceration does not affect his or her ability to comply with section III of this agreement. Assistance is pursuant to limits established in section VI of this agreement.

VIII. By accepting HAP assistance,
    A. Client agrees to indemnify and hold Evergreen Health Services harmless from any claims or causes of action arising out of client breach of this agreement.
    B. Client understands that an action to reduce Food Stamp assistance will be filed by the NYS Department of Social Services upon acceptance of HAP award

IX. Evergreen Health Services does not discriminate on the basis of race, creed, gender, age, or sexual orientation.

I, **VERN LOCKRIDGE** , having duly read and understanding this agreement and having received duplicate copy thereof, agree to abide by the terms and conditions therein.

_(Client Signature)_      2/29/24 _(Date)_

_(EHS Housing Assistance Program Staff Signature)_      2-29-24 _(Date)_

_(Director of Housing Placement & Retention or Director of Supportive Services)_      2/21/24 _(Date)_

## EHS Housing Assistance Program Rental Stipend Agreement

I. This is an agreement between Evergreen Health Services, herein referred to as EHS, and the client, | **VERN LOCKRIDGE** | stating the terms and conditions of acceptance in the EHS Housing Assistance Program (HAP) as it relates to the dwelling at:

| **465 E UTICA AVE** | | |
|---|---|---|
| **BUFFALO** | **NEW YORK** | **14208** |

this agreement is effective | **2/16/2024** | and will remain in effect unless amended by the parties in accordance with the provisions of Section IV. In the event of changes in income, household composition, or significant life change, a new agreement will be made if the client's eligibility for participation is not affected by those chances.

II. EHS HAP will be responsible for the provision or arrangement of the following:

A. Direct payment of | $ | **739** | monthly to the order of

**L3L CORP (LAMAR WARD)**
(Landlord Name)

**5325 SHERIDAN DRIVE UNIT 402**
(Landlord Address)

**BUFFALO, NY 14231**
(Landlord City, State, Zip)

to be applied to the client's regular rent.

B. Ongoing interaction with the care team (CM, counselor, PCP) as it relates to the health and housing of the client.

C. Other services of a care coordinator/ case manager as requested or required, including referral to the EHS Community Follow-up Program.

D. Utility reimbursement in the amount of: | $ | - | /month to the client

E. Confidentiality of all client information.

III. The client agrees to be responsible for the following:

A. Timely payment to the landlord in the amount of | $ | **261** | /month. Payment from DSS in the amount of | $ | - | will be sent directly to the landlord

B. Notification of any financial or household composition changes within ten (10) days of the change

C. Compliance with all tenant obligations of the lease

D. Allow at least, but not limited to, one home inspection per year

E. Monthly home visits with HAP staff.

F. Respect for the confidentiality of the program and persons associated with it

G. Actively seek permanent housing subsidy from a federal section 8 provider.

IV. This agreement may be terminated in any of the following manners

A. Upon 30 day written notice from the client

B. Upon 30 day written notice from the EHS HAP

C. By mutual agreement.

D. Involuntary and immediate termination of services of this agreement may occur for one or more of the following

1. Medical in-home services are inadequate to meet the needs of the client,

2. Client's behavior poses an imminent risk of serious physical harm to self or others.

3. Client does not abide by the conditions of the lease,

4. Client does not abide by the conditions outlined in section III of this agreement,

5. Misrepresentation of facts which lead to the acceptance or continuation of HAP assistance.

6. Client fails to maintain the confidentiality of the program or persons associated.

7. EHS discontinues administration of services or no longer receives funds to provide associated services, or

8. Client is awarded permanent housing subsidy or is no longer eligible for this assistance.

**EvergreenHealth**
**UNCONDITIONAL.**

p. 716.847.2441 | f. 716.847.2715 | evergreenhs.org

| 206 S. Elmwood Ave. | 3297 Bailey Ave. | 800 Hertel Ave., Suite 100 | 7 Community Dr., Suite A | 320 Prather Ave. |
| Buffalo, NY 14201 | Buffalo, NY 14215 | Buffalo, NY 14207 | Cheektowaga, NY 14225 | Jamestown, NY 14701 |

# PARTICIPATION and SUBLEASE AGREEMENT

**Patient Name:** Vern Lockridge
**DOB:** 12/13/1974
**ACCT#:** 3243

This Participation and Sublease Agreement is made 04/16/2024 , by and between EHS, INC. d/b/a EVERGREEN HEALTH a New York State not-for-profit corporation having a principal office at 206 S. Elmwood Ave., Buffalo, NY 14201 ("Evergreen Health") and Vern Lockridge (the "Client").

WHEREAS, Evergreen Health operates a Housing First Program ("Program") where it subleases certain real property in Western New York for the purpose of providing stable, permanent housing for its Program participants; and

WHEREAS, Evergreen Health is the tenant and  is the landlord ("Landlord") in and under a certain lease dated 00/00/0000 (the "Lease") for apartment number Lower unit (the "Apartment") located in a building having an address at 1329 Kenmore Avenue Kenmore New York 14217 (the "Building") with a term from 02/01/2024 to 01/31/2025 the ("Lease Term"); and

WHEREAS, Evergreen Health desires to sublease the Apartment to Client and desires Client to participate in the Program, and Client desires to sublease the Apartment from Evergreen Health and desires to participate in the Program; and

NOW, THEREFORE, for valuable consideration, the receipt and sufficiency of which is acknowledged, the parties hereto agree as follows:

## 1. SUBJECT TO LEASE

The Client represents that they have read this Participation and Sublease Agreement, a copy of which has been provided to Client. All of the terms, covenants and provisions of the apartment's Lease are hereby incorporated into this Agreement by reference. The Client acknowledges and agrees to be bound by all such terms, covenants and provisions and agrees not to violate any of the terms of the Lease in any way. This Agreement is subject to the Lease; if for any reason whatsoever the Lease shall expire, terminate, otherwise come to an end, or shall not be renewed, this Agreement shall simultaneously expire, terminate and come to an end.

## 2. TERM

A.  Provided the Client complies with the terms, covenants and provisions of the Lease and this Agreement, Evergreen Health and the Client agree that the Client shall be entitled to participate in the Program and sublet the Apartment during the Lease Term.

B.  Evergreen Health expects that the Lease will be continuously renewed. For so long as the Lease remains in effect, this Agreement shall be automatically renewed, provided the Client abides by the terms and conditions of this Agreement.

C.  If the Lease shall not be renewed, the Client must vacate the Apartment on or prior to the last day of the Lease Term.

D.  If the Client is discharged from the Program for cause, this Agreement shall terminate and the Client must vacate the Apartment.

E.  If the Client graduates from the Program, this Agreement shall terminate on the date of graduation, and the Client's continued occupancy of the Apartment, if so desired, is at the absolute discretion

of Evergreen Health and the Landlord.

F.   If Evergreen Health deems it necessary, Evergreen Health may require Client to move to a different apartment leased by Evergreen Health in connection with the Program.

## 3. <u>USE</u>

The Client shall use the Apartment solely as a private residential dwelling as his/her primary residence. **The Apartment may be used and occupied solely by the Client**. The Apartment may not be used as a residence by any other individuals. Other individuals living in the client's Apartment will put the client's Apartment in jeopardy. The Client can be terminated for allowing others to live in said Apartment.

## 4. <u>RULES and REGULATIONS</u>

As part of the Program, Evergreen Health is permitting the Client to sublease the Apartment and the Client agrees to be bound by the following Rules and Regulations:

- The Client allows their Housing Retention Counselor access to the Apartment.
- The Client maintains regular contact with their Housing Retention Counselor.
- The Client may not sell any furniture, household, electronic or decorative items that are provided by Evergreen Health and Client is responsible for keeping such furnishings in as good condition as possible.
- The Client respects the confidentiality of the Program and any persons associated with it.
- The Client reviews, revises, and plans progress towards goals of self-sufficiency.
- The Client will not change the locks or do anything that will impede Evergreen Health's staff from entering the Apartment.
- The Client shall not make any alterations to the Apartment without the prior written consent of Evergreen Health.
- The Client shall notify Evergreen Health of any changes in income within ten (10) days of such change.

The Client's failure to abide by the Rules and Regulations implemented by either Evergreen Health or the building's Landlord may be grounds for termination of this Agreement and eviction from the Apartment.

## 5. <u>OBJECTIONABLE CONDUCT</u>

A.   The Client shall not engage in any objectionable conduct whatsoever.
"Objectionable conduct" includes behavior by the Client, or any guests of the Client, which makes, or will make, the Apartment or the Building dangerous, hazardous, unsanitary and/or detrimental to other tenants or occupants of the Building. It also includes any conduct by the Client, or by guests of the Client, which interferes with the right of the other tenants or occupants of the building to quiet enjoyment of their apartments. Any violation of this paragraph shall constitute a substantial breach of this Agreement and will be grounds for termination of this Agreement and eviction from the Apartment.

B.   The following behaviors by the Client or any guests of the Client in, at or on the property of the Apartment or the Building are **strictly prohibited** and may be grounds for immediate termination of this Agreement and eviction from the Apartment:

(a)  The use of, or possession of, any illegal drugs (other than authorized prescription drugs), or related paraphernalia; or
(b)  The possession or use of any weapon; or
(c)  The creation of severe disturbances, or behavioral problems that interfere with the orderly operation of the Program or interfere with the quiet enjoyment of any other tenant or occupant of the Building; or
(d)  Any behavior that poses imminent risk of death or physical harm to any other tenant or occupant of the Building or any other person; or
(e)  Any behavior that causes damage to the property of Evergreen Health or that of the Landlord or any other tenant or occupant of the Building.

## 6. <u>RENT; UTILITIES</u>

A.   Evergreen Health shall pay the full rental amount as required under the Lease directly to Landlord.  Client shall pay to Evergreen Health thirty percent (30%) of Client's net (after tax) monthly income as Client's contribution toward rent for the Apartment.  Client shall pay their rent contribution on or before the first day of each calendar month by check or money order payable to EHS, Inc., sent to the attention of Evergreen Health, Accounts Receivable, 206 S. Elmwood Avenue, Buffalo, NY 14201.  If Client fails to make any payment of rent contribution by the fifth calendar day of the month, Client may be subject to late fees.

B.   Client shall be responsible for payment of the following utilities:
                                              . Client shall place such utilities in Client's name upon occupancy of the Apartment.

C.   The Client shall obtain phone service, at their own cost, and ensure that Evergreen Health has a phone number at which he/she can be reached.

D.   If client fails to make any rent or utility payments required under this Section 6 for three (3) consecutive months, Client agrees to work with Erie County Adult Protective Services to have a representative payee appointed on Client's behalf.

## 7. TERMINATION; RENEWAL

A.   It is expressly understood and agreed that the Client's participation and sublease of the Apartment pursuant to this Agreement is for a term which is the shorter of one (1) year, or the time left on the Lease Term of the Lease between Evergreen Health and the Building's Landlord. It is Evergreen Health's intention, however, to provide stable, permanent housing for the Client. Consequently, provided (1) Evergreen Health is entitled to and does renew the Lease, and (2) the Client is in compliance with the provisions of this Agreement and with the Program, then this Agreement shall be automatically renewed through the expiration date of each such renewal term of the Lease.

B.   This Agreement may be terminated by Evergreen Health or Client for any reason upon 30 days' written notice.

C.   At termination of this Agreement, including any renewal terms, the Client shall deliver the Apartment "broom clean" and in good order and condition, except for reasonable wear and tear, and shall remove all of his/her personal property from the Apartment. Any of the Client's personal property that is left in the Apartment at the end of the term of this Agreement shall be deemed abandoned and Evergreen Health shall have no responsibility for same.

D.   If the Client is required to vacate the Apartment upon the expiration of the Lease, and the last day of the Lease Term is a Saturday, Sunday or State or Federal holiday, the term of this Agreement shall end on the prior business day.

E.   It is agreed that Evergreen Health, by entering into this Agreement, is not deprived of any legal or equitable remedy for obtaining possession of the Apartment in the event of the Client's failure to vacate the Apartment.

## 8. ASSIGNMENT

This Agreement may not be assigned by the Client. The Client's failure to abide by the terms of this provision shall be grounds for termination of this Agreement and eviction from the Apartment.

## 9. ABANDONMENT

A.   If the client is away from the apartment for more than two consecutive months and has not been in contact with Evergreen Health regarding their absence, the apartment shall be considered abandoned. Any of the Client's personal property that is left in the unit shall be deemed abandoned and Evergreen Health shall

have no responsibility for same.

B.   Re-housing the Client after a period of abandonment is at the sole discretion of Evergreen Health. Fees related to cleaning the abandoned unit, moving property, etc. may be required to be paid by Client upon re-housing. It is at the sole discretion of Evergreen Health to require payment up front for said costs or to develop a payment plan.

## 10. INCARCERATION OR HOSPITALIZATION

Should Client be incarcerated, hospitalized or in inpatient treatment for medical and or/substance recovery, Evergreen Health will continue assistance under this Program for a period not to exceed ninety (90) days.  Re-housing upon discharge will be at the sole discretion of Evergreen Health.

## 11. FIRE and CASUALTY

The Client shall give Evergreen Health prompt notice of fire, accident, damage or any dangerous conditions in or about the Apartment and/or in or about the Building.

## 12. REPAIRS

A.   The Client has inspected the Apartment, and agrees to take the same in the present "as is" condition. The Client shall take good care of the Apartment and the appliances, equipment, furniture and fixtures therein. In the event that any part of the Apartment shall fall into disrepair due to no fault of the Client, the Client shall promptly notify Evergreen Health (within 48 hours).  Evergreen Health shall take the appropriate measures to address the Client's repair concerns.

B.   Wherever the need for repair results from their negligence or their guests' negligence, or intentional misconduct, normal wear and tear excepted, then the Client shall notify Evergreen Health within 48 hours. Evergreen Health may make such repairs and replacements and shall thereafter make a payment arrangement with the Client for reimbursement. The Client shall be required to reimburse Evergreen Health for its expenses.

## 13. ACCESS

The Client shall permit the Landlord and its agents access into the Apartment in accordance with the Lease. Failure to permit such access and entry shall be deemed a material breach of this Agreement. The Client shall permit Evergreen Health and its agents access into the Apartment upon reasonable notice and at reasonable times. Both the Landlord and Evergreen Health and their agents shall have immediate access into the Apartment in event of emergency without providing notice to the Client. The Client shall leave a duplicate key to the Apartment (and all entry doors to the Building) with their Housing Retention Counselor.

## 14. SERVICES

A.   In the event that heat, hot and cold water, gas and electric service are not being supplied to the Apartment as required by the Lease, the Client shall promptly notify Evergreen Health. Evergreen Health is not responsible for any defect in such services.

B.   Evergreen Health intends to supply a bed for Client. Unless otherwise agreed to, any furniture and/or equipment provided by Evergreen Health is and remains the property of Evergreen Health. The Client shall deliver same in good order and condition except for reasonable wear and tear, at the expiration of this Agreement.

## 15. NO PETS

No pets are allowed in the Apartment.

## 16. INDEMNITY

The Client acknowledges that Evergreen Health is not, and shall not be responsible to the Client for any injury to the Client or damage occurring as a result of the Client's occupancy of the Apartment. The Client is responsible for any damage to the Apartment and any claims arising in connection with the Client's occupancy of the Apartment (including, without limitation, attorneys' fees and disbursements). If Evergreen Health incurs damages due to a claim of any nature whatsoever arising out of or in connection with the Client's occupancy of the Apartment under this Agreement, the Client will indemnify Evergreen Health.

## 17. NOTICES

The Client agrees to promptly forward to Evergreen Health any notices, letters or correspondence ("Notices") that they receive at the Apartment or otherwise from the Landlord.

## 18. EVERGREEN HEALTH'S CONTACT

Until further written notice, the Client's designated contact at Evergreen Health shall be his/her Housing Retention Counselor. This means that keys to the Apartment and the Building shall be given to the Housing Retention Counselor; any discussion about this Agreement shall be with a Housing Retention Counselor; all Notices received by the Client shall be forwarded to the Housing Retention Counselor; and any inquiries, questions or problems associated with this Agreement shall be made, given or directed to the Housing Retention Counselor.

## 19. FULL AGREEMENT

The Client acknowledges that they have read this Agreement and understands its terms and conditions. There are no other agreements by or between the Client and Evergreen Health regarding the Apartment. This Agreement may only be changed in writing, signed by both the Client and Evergreen Health.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**Evergreen Health Housing Staff:**

*Emilio Rodriguez*
Emilio Rodriguez

Electronically signed by Emilio Rodriquez on 04/16/2024

**The Client:**

Electronically signed on 04/16/2024 at 11:49 am
Vern Lockridge

v1.01.24



Evergreen Health

Patient Program Contract

Reminders regarding home visits

4/16/24

Re. Vern Lockridge

During a home visit on 3/20/24 you indicated that you did not feel safe in your unit at 465 East Utica. Due to your concerns, you are being moved to 1329 Kenmore Ave Lower. We hope that this move increases your feelings of safety and wellbeing.

During the home visit on 3/20/24 you had a kitchen knife on your person. You indicated that it helped you feel safer.

Going forward, there can be no weapons of any kind on your person or kept out during home visits.

Your housing retention counselor cannot conduct the home visits required for the Housing First Program in the presence of weapons of any kind. Your Housing Retention Counselor will also be joined by a co-worker for future home visits. The need for two-person home visits will be re-assessed after 6 months.

_____          4/16/24
Client Signature                                   Date

_____          4/16/24
Housing Retention Counselor Signature          Date

_____          4/14/24
Director of Housing Signature                    Date



EvergreenHealth
**UNCONDITIONAL.**

p. 716.847.2441 | f. 716.847.2715 | evergreenhs.org

| 206 S. Elmwood Ave. Buffalo, NY 14201 | 3297 Bailey Ave. Buffalo, NY 14215 | 800 Hertel Ave., Suite 100 Buffalo, NY 14207 | 7 Community Dr., Suite A Cheektowaga, NY 14225 | 320 Prather Ave. Jamestown, NY 14701 |

Tuesday August 27, 2024

Vern Lockridge
1329 Kenmore Ave
Kenmore, NY  14217

Dear Vern Lockridge,

Enclosed please find the documents that you requested during our phone call on 8/21/24.

Housing First Sublease/Participation agreement for 465 East Utica 3rd Floor Buffalo NY 14208-singed 8/10/23
Housing First Initial Service Plan-signed 11/7/23
Housing First Orientation Packet- signed 2/29/24
EHS Housing Assistance Program Rental Stipend Calculation-signed 2/29/24
Patient Program Contract-signed 4/16/24
Participation and Sublease Agreement for 1329 Kenmore Ave Lower Buffalo NY 14217-signed 4/16/24

Best Regards,

Kristin Rivera

Electronically signed by Kristin Rivera on 08/27/2024



EvergreenHealth
**UNCONDITIONAL.**

p. 716.847.2441 | f. 716.847.2715 | ewgreenhs.org

206 S. Elmwood Ave         3297 Bailey Ave.         800 Hertel Ave., Suite 100         7 Community Dr., Suite A         320 Prather
Buffalo, NY 14201          Buffalo, NY 14215        Buffalo, NY 14207                 Cheektowaga, NY 14225            Jamestown, NY

Wednesday November 6, 2024

Vern Lockridge
1329 Kenmore Ave
Kenmore, NY  14217

Dear Vern Lockridge,

Due to statements made to and about housing  staff, we are no longer able to safely conduct home visits, therefore,
are being disenrolled from the Evergreen Housing First Program effective, 12/6/24.

A representative from the Homeless Alliance of Western New York (HAWNY) will be calling you to discuss housing
alternatives with you.  The representative's name is Ashley and we strongly recommend that you engage in a
conversation with her.

Please reach out to the Compliance Help Line  at Evergreen for any legal concerns that you may have at 716-834444

 Best Regards,

Emilio Rodriguez
Emilio Rodriguez

Electronically signed by Emilio Rodriquez on 11/06/2024



**EvergreenHealth**
**UNCONDITIONAL.**

p. 716.847.2441 | f. 716.847.2715 | evergreenhs.org

| 206 S. Elmwood Ave. | 3297 Bailey Ave. | 800 Hertel Ave., Suite 100 | 7 Community Dr., Suite A | 320 Prather Ave. |
| Buffalo, NY 14201 | Buffalo, NY 14215 | Buffalo, NY 14207 | Cheektowaga, NY 14225 | Jamestown, NY 14701 |

Wednesday November 6, 2024


Vern Lockridge
1329 Kenmore Ave
Kenmore, NY  14217


Dear Vern Lockridge,

Due to statements made to and about housing  staff, we are no longer able to safely conduct home visits, therefore, you are being disenrolled from the Evergreen Housing First Program effective, 12/6/24.

A representative from the Homeless Alliance of Western New York (HAWNY) will be calling you to discuss housing alternatives with you.  The representative's name is Ashley and we strongly recommend that you engage in a conversation with her.

Please reach out to the Compliance Help Line  at Evergreen for any legal concerns that you may have at 716-844-0520


 Best Regards,


 *Emilio Rodriguez*
 Emilio Rodriguez

Electronically signed by Emilio Rodriguez on 11/06/2024



## United States Department of Justice
## Civil Rights Division
civilrights.justice.gov

# Thank you for submitting a report to the Civil Rights Division.

### Report successfully submitted

*Please save your record number for tracking.*

 Your record number is: **532569-RNS**

**Save report**

---

# What to expect
---

### ① We review your report

Our specialists in the Civil Rights Division carefully read every report to identify civil rights violations, spot trends, and determine if we have authority to help with your report.

### ② Our specialists determine the next step

We may decide to:
**Open an investigation** or take some other action within the legal authority of the Justice Department.
**Collect more information** before we can look into your report.
**Recommend another government agency** that can properly look into your report. If so, we'll let you know.

In some cases, we may determine that we don't have legal authority to handle your report and will recommend that you seek help from a private lawyer or local legal aid organization.

### ③ When possible, we will follow up with you

We do our best to let you know about the outcome of our review. However, we may not always be able to provide you with updates because:
We're actively working on an investigation or case related to your report.
We're receiving and actively reviewing many requests at the same time.

If we are able to respond, we will contact you using the contact information you provided in this report. Depending on the type of report, response times can vary. If you need to reach us about your report, please refer to your report number when contacting us. This is how we keep track of your submission.





Evergreen Housi...

She contacted crisis services when I made an complaint about someone entering my apartment while I was sleep let's don't change the subject and now she's not your boss? I have all text messages make sure you get me the recording she did of me and the police report she made me file!





**Email 1 (Apr 3):**

Emilio Rodriguez
To You

Good Morning Wem,
I just received this email and we encourage you to call the police if this individual is threating you again.

Emilio Rodriguez
Housing First Retention Counselor
erodriguez@evergreenhs.org
716-847-2441
206 S. Elmwood Ave., Buffalo, NY, 14201

EvergreenHealth
UNCONDITIONAL

This message is confidential and is intended only for the named recipient(s). It may be privileged or protected by work product immunity or other legal rules. If you are not the intended recipient(s), the dissemination, distribution, or copying of this message is prohibited. If you have

← Reply

**Email 2 (May 7):**

Emilio Rodriguez
To You

Good morning Wem,
I received your email this morning and want to say you handled that situation very well. Please continue to avoid this individual and when will you be available to meet for a home visit.

Emilio Rodriguez
Housing First Retention Counselor
erodriguez@evergreenhs.org
716-847-2441
206 S. Elmwood Ave., Buffalo, NY, 14201

EvergreenHealth
UNCONDITIONAL

This message is confidential and is intended only for the named recipient(s). It may be privileged or protected by work product immunity or other legal rules. If you are not the intended recipient(s), the dissemination, distribution,

← Reply all



**EvergreenHealth**
**UNCONDITIONAL.**

p. 716.847.2441 | f. 716.847.2715 | evergreenhs.org

| 206 S. Elmwood Ave. | 3297 Bailey Ave. | 800 Hertel Ave. | 7 Community Dr., Suite A |
| Buffalo, NY 14201 | Buffalo, NY 14215 | Buffalo, NY 14207 | Cheektowaga, NY 14225 |

November 12, 2024

**VIA U.S. MAIL & HAND DELIVERY**
Vern Lockridge
1329 Kenmore Ave. Lower Unit
Kenmore NY 14217

RE:    **30-DAY NOTICE OF LEASE TERMINATION**
Dear Vern Lockridge:

Please allow this correspondence to serve as a 30-Day Notice of Termination of the Sublease Agreement you entered into with Evergreen Housing First Program on 04/16/24. As set forth in this Notice, you are in violation of your Sublease Agreement.

**Violation(s):**

**(1)** On 9/25/24 you made threatening statements to Evergreen's Director of Housing, indicating that you will "kill" the next person who tries to enter your apartment. This is a violation of Paragraph 5 of your Sublease Agreement, which prohibits you from engaging in objectionable conduct, including behavior that makes or will make the Apartment or Building dangerous. Paragraph 5 also specifically prohibits you from creating severe disturbances that interfere with the orderly operation of the Housing First Program, and from engaging in any behavior that poses an imminent risk or death or physical harm to any person. Because of the threatening statements you made on 9/25/24, Evergreen Housing staff are no longer able to access your apartment. This constitutes a violation of the Rules and Regulations of your Sublease Agreement (Paragraph 4), which requires you to allow your Housing Retention Counselor access to your apartment.

**(3)** On 9/20/24, you demanded Evergreen Housing to change the locks to your unit, and insisted that Evergreen Housing staff do not have a copy of the key or access to your unit. This is also a violation of the Rules and Regulations in your Sublease Agreement, which, as noted above, requires you to allow your Housing Retention Counselor access to your apartment.

**(2)** While residing at your previous address, at 465 East Utica, Unit Upper, Buffalo, NY, you had a knife on your person during a home visit conducted by two Evergreen Housing Retention Counselors on 3/20/24. This behavior was a clear violation of your Sublease Agreement, which strictly prohibited the possession of any weapon, and as a result of this behavior, you were placed under a Behavioral Contract on 4/16/24.

For the reasons set forth herein, your Sublease Agreement and tenancy is hereby **terminated as 12:00 P.M. on December 31, 2024,** and if you do not vacate the premises by this date, Evergreen Housing will commence formal eviction proceedings.

**EvergreenHealth**
**UNCONDITIONAL.**

p. 716.847.2441 | f. 716.847.2715 | evergreenhs.org

| 206 S. Elmwood Ave. | 3297 Bailey Ave. | 800 Hertel Ave. | 7 Community Dr., Suite A |
| Buffalo, NY 14201 | Buffalo, NY 14215 | Buffalo, NY 14207 | Cheektowaga, NY 14225 |

Sincerely,

[Name]
*[Title]*
Evergreen Health

**NOTICE TO TENANT OF APPLICABILITY OR INAPPLICABILITY OF THE NEW YORK STATE GOOD CAUSE EVICTION LAW**

This notice from your landlord serves to inform you of whether or not your unit/apartment/home is covered by the New York State Good Cause Eviction Law (Article 6-A of the Real Property Law) and, if applicable, the reason permitted under the New York State Good Cause Eviction Law that your landlord is not renewing your lease. Even if your apartment is not protected by Article 6-A, known as the New York State Good Cause Eviction Law, you may have other rights under other local, state, or federal laws and regulations concerning rents and evictions. This notice, which your landlord is required to fill out and give to you, does not constitute legal advice. You may wish to consult a lawyer if you have any questions about your rights under the New York State Good Cause Eviction Law or about this notice.

NOTICE (THIS SHOULD BE FILLED OUT BY YOUR LANDLORD)

UNIT INFORMATION

STREET:
1329    Kenmore Ave

UNIT OR APARTMENT NUMBER:
Lower

CITY/TOWN/VILLAGE:
Kenmore    NY

STATE:
NY

ZIP CODE:
14217

1. IS THIS UNIT SUBJECT TO ARTICLE 6-A OF THE REAL PROPERTY LAW, KNOWN AS THE NEW YORK STATE GOOD CAUSE EVICTION LAW? (PLEASE MARK APPLICABLE ANSWER)

YES ___
NO X

2. IF THE UNIT IS EXEMPT FROM ARTICLE 6-A OF THE REAL PROPERTY LAW, KNOWN AS THE NEW YORK STATE GOOD CAUSE EVICTION LAW, WHY IS IT EXEMPT FROM THAT LAW? (PLEASE MARK ALL APPLICABLE EXEMPTIONS)

A. Village/Town/City outside of New York City has not adopted good cause eviction under section 213 of the Real Property Law X ;

B. Unit is owned by a "small landlord," as defined in subdivision 3 of section 211 of the Real Property Law, who owns no more than 10 units for small landlords located in New York City or the number of units established as the maximum amount a "small landlord" can own in the state by a local law of a village, town, or city, other than New York City, adopting the provisions of Article 6-A of the Real Property Law, known as the New York State Good Cause Eviction Law, or no more than 10 units, as applicable. In connection with any eviction proceeding in which the landlord claims an exemption from the provisions of Article 6-A of the Real Property Law, known as the New York State Good Cause Eviction Law, on the basis of being a small landlord, the landlord shall provide to the tenant or tenants subject to the proceeding the name of each natural person who owns or is a beneficial owner of, directly or indirectly, in whole or in part, the housing accommodation at issue in the proceeding, the number of units owned, jointly or separately, by each such natural person owner, and the addresses of any such units, excluding each natural person owner's principal residence. If the landlord is an entity, organized under the laws of this state or of any other jurisdiction, then such landlord shall provide to the tenant or tenants subject to the proceeding the name of each natural person with a direct or indirect ownership interest in such entity or any affiliated entity, the number of units owned, jointly or separately, by each such natural person owner, and the addresses of any such units, excluding each natural person owner's principal residence (exemption under subdivision 1 of section 214 of the Real Property Law) ___;

C. Unit is located in an owner-occupied housing accommodation with no more than 10 units (exemption under subdivision 2 of section 214 of the Real Property Law) ___;

D. Unit is subject to regulation of rents or evictions pursuant to local, state, or federal law (exemption under subdivision 5 of section 214 of the Real Property Law)___;

E. Unit must be affordable to tenants at a specific income level pursuant to statute, regulation, restrictive declaration, or pursuant to a regulatory agreement with a local, state, or federal government entity (exemption under subdivision 6 of section 214 of the Real Property Law) ___;

F. Unit is on or within a housing accommodation owned as a condominium or cooperative, or unit is on or within a housing accommodation subject to an offering plan submitted to the office of the attorney general (exemption under subdivision 7 of section 214 of the Real Property Law) __;

G. Unit is in a housing accommodation that was issued a temporary or permanent certificate of occupancy within the past 30 years (only if building received the certificate on or after January 1st, 2009) (exemption under subdivision 8 of section 214 of the Real Property Law) __;

H. Unit is a seasonal use dwelling unit under subdivisions 4 and 5 of section 7-108 of the General Obligations Law (exemption under subdivision 9 of section 214 of the Real Property Law) __;

I. Unit is in a hospital as defined in subdivision 1 of section 2801 of the Public Health Law, continuing care retirement community licensed pursuant to Article 46 or 46-A of the Public Health Law, assisted living residence licensed pursuant to Article 46-B of the Public Health Law, adult care facility licensed pursuant to Article 7 of the Social Services Law, senior residential community that has submitted an offering plan to the attorney general, or not-for-profit independent retirement community that offers personal emergency response, housekeeping, transportation and meals to their residents (exemption under subdivision 10 of section 214 of the Real Property Law) __;

J. Unit is a manufactured home located on or in a manufactured home park as defined in section 233 of the Real Property Law (exemption under subdivision 11 of section 214 of the Real Property Law) __;

K. Unit is a hotel room or other transient use covered by the definition of a class B multiple dwelling under subdivision 9 of section 4 of the Multiple Dwelling Law (exemption under subdivision 12 of section 214 of the Real Property Law) __;

L. Unit is a dormitory owned and operated by an institution of higher education or a school (exemption under subdivision 13 of section 214 of the Real Property Law) __;

M. Unit is within and for use by a religious facility or institution (exemption under subdivision 14 of section 214 of the Real Property Law) __;

N. Unit has a monthly rent that is greater than the percent of fair market rent established in a local law of a village, town, or city, other than New York City, adopting the provisions of Article 6-A of the Real Property Law, known as the New York Good Cause Eviction Law, or 245 percent of the fair market rent, as applicable. Fair market rent refers to the figure published by the United States Department of Housing and Urban Development, for the county in which the housing accommodation is located, as shall be published by the Division of Housing and Community Renewal no later than August 1st in any given year. The Division of Housing and Community Renewal shall publish the fair market rent and 245 percent of the fair market rent for each unit type for which such fair market rent is published by the United States Department of Housing and Urban Development for each county in New York State in the annual publication required pursuant to subdivision 7 of section 211 of the Real Property Law (exemption under subdivision 15 of section 214 of the Real Property Law) ___;

3. IF THIS UNIT IS SUBJECT TO ARTICLE 6-A OF THE REAL PROPERTY LAW, KNOWN AS THE NEW YORK STATE GOOD CAUSE EVICTION LAW, AND THIS NOTICE SERVES TO INFORM A TENANT THAT THE LANDLORD IS INCREASING THE RENT ABOVE

THE THRESHOLD FOR PRESUMPTIVELY UNREASONABLE RENT INCREASES, WHAT IS THE

LANDLORD'S JUSTIFICATION FOR INCREASING THE RENT ABOVE THE THRESHOLD FOR

PRESUMPTIVELY UNREASONABLE RENT INCREASES? (A rent increase is presumptively unreasonable if the increase from the prior rent is greater than the lower of: (a) 5 percent plus the annual percentage change in the consumer price index for all urban consumers for all items as published by the United States Bureau of Labor Statistics for the region in which the housing accommodation is located, as published not later than August 1st of each year by the Division of Housing and Community Renewal; or (b) 10 percent.) (PLEASE MARK AND FILL OUT THE APPLICABLE RESPONSE)

A. The rent is not being increased above the threshold for presumptively unreasonable rent increases described above: ___;

B. The rent is being increased above the threshold for presumptively

unreasonable rent increases described above: ___;
B-1: If the rent is being increased above the threshold for
presumptively unreasonable rent increases described above, what is the
justification for the increase:

_____

_____

_____

_____

4. IF THIS UNIT IS SUBJECT TO ARTICLE 6-A OF THE REAL PROPERTY LAW,
KNOWN AS THE NEW YORK STATE GOOD CAUSE EVICTION LAW, AND THIS NOTICE
SERVES TO INFORM A TENANT THAT THE LANDLORD IS NOT RENEWING A LEASE,
WHAT IS THE GOOD CAUSE FOR NOT RENEWING THE LEASE? (PLEASE MARK ALL
APPLICABLE REASONS)
A. This unit is exempt from Article 6-A of the Real Property Law, known
as the New York State Good Cause Eviction Law, for the reasons stated in
response to question 2, above (IF THIS ANSWER IS CHECKED, NO OTHER
ANSWERS TO THIS QUESTION SHOULD BE CHECKED): ___;
B. The tenant is receiving this notice in connection with a first lease
or a renewal lease, so the landlord does not need to check any of the
lawful reasons listed below for not renewing a lease under Article 6-A
of the Real Property Law, known as the New York State Good Cause
Eviction Law (IF THIS ANSWER IS CHECKED, NO OTHER ANSWERS TO THIS
QUESTION SHOULD BE CHECKED) ___;
C. The landlord is not renewing the lease because the unit is sublet and
the sublessor seeks in good faith to recover possession of the unit for
their own personal use and occupancy (exemption under subdivision 3 of
section 214 of the Real Property Law): ___;
D. The landlord is not renewing the lease because the possession, use or
occupancy of the unit is solely incident to employment and the
employment is being or has been lawfully terminated (exemption under
subdivision 4 of section 214 of the Real Property Law): ___;
E. The landlord is not renewing the lease because the tenant has failed
to pay rent due and owing, and the rent due or owing, or any part
thereof, did not result from a rent increase which is unreasonable. A
rent increase is presumptively unreasonable if the increase from the
prior rent is greater than the lower of: (a) 5 percent plus the annual

percentage change in the consumer price index for all urban consumers for all items as published by the United States Bureau of Labor Statistics for the region in which the housing accommodation is located, as published not later than August 1st of each year by the Division of Housing and Community Renewal; or (b) 10 percent (good cause for eviction under paragraph a of subdivision 1 of section 216 of the Real Property Law): ___;

F. The landlord is not renewing the lease because the tenant is violating a substantial obligation of their tenancy or breaching any of the landlord's rules and regulations governing the premises, other than the obligation to surrender possession of the premises, and the tenant has failed to cure the violation after written notice that the violation must cease within 10 days of receipt of the written notice. For this good cause to apply, the obligation the tenant violated cannot be an obligation that was imposed for the purpose of circumventing the intent of Article 6-A of the Real Property Law, known as the New York State Good Cause Eviction Law. The landlord's rules or regulations that the tenant has violated also must be reasonable and have been accepted in writing by the tenant or made a part of the lease at the beginning of the lease term (good cause for eviction under paragraph b of subdivision 1 of section 216 of the Real Property Law): ___;

G. The landlord is not renewing the lease because the tenant is either (a) committing or permitting a nuisance on the unit or the premises; (b) maliciously or grossly negligently causing substantial damage to the unit or the premises; (c) interfering with the landlord's, another tenant's, or occupants of the same or an adjacent building or structure's comfort and safety (good cause for eviction under paragraph c of subdivision 1 of section 216 of the Real Property Law): ___;

H. The landlord is not renewing the lease because the tenant's occupancy of the unit violates law and the landlord is subject to civil or criminal penalties for continuing to let the tenant occupy the unit. For this good cause to apply, a state or municipal agency having jurisdiction must have issued an order requiring the tenant to vacate the unit. No tenant shall be removed from possession of a unit on this basis unless the court finds that the cure of the violation of law requires the removal of the tenant and that the landlord did not,

through neglect or deliberate action or failure to act, create the condition necessitating the vacate order. If the landlord does not try to cure the conditions causing the violation of the law, the tenant has the right to pay or secure payment, in a manner satisfactory to the court, to cure the violation. Any tenant expenditures to cure the violation shall be applied against rent owed to the landlord. Even if removal of a tenant is absolutely essential to the tenant's health and safety, the tenant shall be entitled to resume possession at such time as the dangerous conditions have been removed. The tenant also retains the right to bring an action for monetary damages against the landlord or to otherwise compel the landlord to comply with all applicable state or municipal housing codes (good cause for eviction under paragraph d of subdivision 1 of section 216 of the Real Property Law): ___;

I. The landlord is not renewing the lease because the tenant is using or permitting the unit or premises to be used for an illegal purpose (good cause for eviction under paragraph e of subdivision 1 of section 216 of the Real Property Law): ___;

J. The landlord is not renewing the lease because the tenant has unreasonably refused the landlord access to the unit for the purposes of making necessary repairs or improvements required by law or for the purposes of showing the premises to a prospective purchaser, mortgagee, or other person with a legitimate interest in the premises (good cause for eviction under paragraph f of subdivision 1 of section 216 of the Real Property Law): ___;

K. The landlord is not renewing the lease because the landlord seeks in good faith to recover possession of the unit for the landlord's personal use and occupancy as the landlord's principal residence, or for the personal use and occupancy as a principal residence by the landlord's spouse, domestic partner, child, stepchild, parent, step-parent, sibling, grandparent, grandchild, parent-in-law, or sibling-in-law. The landlord can only recover the unit for these purposes if there is no other suitable housing accommodation in the building that is available. Under no circumstances can the landlord recover the unit for these purposes if the tenant is (a) 65 years old or older; or (b) a "disabled person" as defined in subdivision 6 of section 211 of the Real Property Law. To establish this good cause in an eviction proceeding, the

landlord must establish good faith to recover possession of a housing accommodation for the uses described herein by clear and convincing evidence (good cause for eviction under paragraph g of subdivision 1 of section 216 of the Real Property Law): ___;

L. The landlord is not renewing the lease because the landlord in good faith seeks to demolish the housing accommodation. To establish this good cause in an eviction proceeding, the landlord must establish good faith to demolish the housing accommodation by clear and convincing evidence (good cause for eviction under paragraph h of subdivision 1 of section 216 of the Real Property Law): ___;

M. The landlord is not renewing the lease because the landlord seeks in good faith to withdraw the unit from the housing rental market. To establish this good cause in an eviction proceeding, the landlord must establish good faith to withdraw the unit from the rental housing market by clear and convincing evidence (good cause for eviction under paragraph i of subdivision 1 of section 216 of the Real Property Law): ___;

N. The landlord is not renewing the lease because the tenant has failed to agree to reasonable changes at lease renewal, including reasonable increases in rent, and the landlord gave written notice of the changes to the lease to the tenant at least 30 days, but no more than 90 days, before the current lease expired. A rent increase is presumptively unreasonable if the increase from the prior rent is greater than the lower of: (a) 5 percent plus the annual percentage change in the consumer price index for all urban consumers for all items as published by the United States Bureau of Labor Statistics for the region in which the housing accommodation is located, as published by August 1st of each year by the Division of Housing and Community Renewal; or (b) 10 percent (good cause for eviction under paragraph j of subdivision 1 of section 216 of the Real Property Law):___.

# In the United States Court of Federal Claims

Case No.: 1:24-cv-01905-LAS

VERN RAMON LOCKRIDGE

v.                                NOTICE OF RANDOM ASSIGNMENT
                                  TO:
                                  Senior Judge Loren A. Smith

THE UNITED STATES

Pursuant to Rule 40.1(a), of the Rules of the United States Court of Federal Claims, this case has been randomly assigned to the above Judge for the conduct of proceedings pursuant to the rules of this court. Careful consideration and observance by counsel of the rules of this court and the orders of the assigned judge will enable the judge and the Clerk of Court to assist counsel in the expeditious disposition of the case with minimum expense. Counsel's attention is called to Appendix A of the rules of this court which governs proceedings before trial, and has application in every case unless an order is entered providing otherwise. For format requirements, see Rule 5.5. For service and filing requirements, see Rule 5. For electronic case filing procedures, see Appendix E of the rules of this court.

Counsel's attention is also called to Appendix H of the rules of this court which implements a variety of voluntary, non-binding alternative dispute resolution (ADR) tools for use in appropriate cases. ADR techniques include but are not limited to mediation, mini-trials, early neutral evaluation, and non-binding arbitration.

The United States is requested to promptly file written notification of the name, address and telephone number of assigned counsel in accordance with Rule 83.1(c)(3).

Pursuant to Rule 5.5(g): "In all filings other than the complaint, the name of the judge assigned to the case must be included directly below the docket number."

Lisa L. Reyes
Clerk of Court

JS 44   (Rev. 03/24)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Close2DaEdge Business Solutions LLC
Vern Ramon Lockridge

**(b)** County of Residence of First Listed Plaintiff    Erie
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Pro Se, Vern Ramon Lockridge
1329 Kenmore Ave., Buffalo, NY 14217

## DEFENDANTS

EverGreenHealth Unconditional
Lamar Ward LLC

County of Residence of First Listed Defendant    Erie
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

24 CV 1274 - √

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*    *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [x] 4 | [x] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane / [ ] 365 Personal Injury - | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability / Product Liability | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & / [ ] 367 Health Care/ | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | Slander / Pharmaceutical Personal Injury | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 330 Federal Employers' Liability / Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 340 Marine / [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| | [ ] 345 Marine Product Liability | | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | **PERSONAL PROPERTY** / **LABOR** | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability / [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 360 Other Personal / [ ] 371 Truth in Lending | [ ] 720 Labor/Management Relations | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | Injury / [ ] 380 Other Personal Property Damage | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | [ ] 362 Personal Injury - Medical Malpractice / [ ] 385 Property Damage Product Liability | [ ] 751 Family and Medical Leave Act | [ ] 862 Black Lung (923) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | [ ] 790 Other Labor Litigation | [ ] 863 DIWC/DIWW (405(g)) | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights / **Habeas Corpus:** | [ ] 791 Employee Retirement Income Security Act | [ ] 864 SSID Title XVI | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting / [ ] 463 Alien Detainee | | [ ] 865 RSI (405(g)) | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment / [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations / [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [x] 445 Amer. w/Disabilities - Employment / [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other / **Other:** / [ ] 540 Mandamus & Other | [ ] 462 Naturalization Application | | |
| | [ ] 448 Education / [ ] 550 Civil Rights | [ ] 465 Other Immigration Actions | | |
| | [ ] 555 Prison Condition | | | |
| | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
446

Brief description of cause:
Mislead me through their services and placed my life in danger

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $
1,500,000

CHECK YES only if demanded in complaint:
JURY DEMAND:   [ ] Yes   [x] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____    DOCKET NUMBER _____

DATE   12/27/2024

SIGNATURE OF ATTORNEY OF RECORD   *Vern Ramon Lockridge*

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____